IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION

**JAMES RIVER EQUIPMENT,
VIRGINIA, LLC,**

    **Plaintiff,**

v.                                           **CIVIL ACTION NO. 5:13-28160**

**JUSTICE ENERGY COMPANY, INC.**

    **Defendant.**

## DEFENDANT JUSTICE ENERGY COMPANY, INC.'S
## MEMORANDUM OF LAW IN SUPPORT OF ITS
## MOTION TO ALTER OR AMEND SANCTION JUDGMENT

Defendant Justice Energy Company, Inc. ("Justice Energy"), by and through its undersigned counsel, G. Nicholas Casey, Jr., Richard L. Gottlieb and Ramonda C. Lyons of the law firm Lewis Glasser Casey & Rollins, PLLC and John F. Hussell, IV, Andrew L. Ellis and John (Jody) D. Wooton, Jr. of the law firm Wooton, Davis, Hussell & Ellis, PLLC, submits this *Memorandum of Law in Support of its Motion to Alter or Amend Sanction Judgment* pursuant to Rule 59(e) of the Federal Rules of Civil Procedure. In its February 25, 2016 Order, the Court entered judgment against Justice Energy in favor of the United States in the amount of one million two hundred thirty thousand dollars ($1,230,000.00) as a sanction for civil contempt. As set forth in more detail below, the sanction is premised upon an incomplete factual record and, when considered in light of the supplemental facts set forth below, is manifestly unjust. As such, it must be amended and vacated. Alternatively, the sanction must be vacated as it is punitive and thus criminal in nature and Justice Energy was not afforded due process in assessment of the

sanction. Lastly, the sanction is not proportionate to the offending conduct, but rather is excessive. For these additional reasons, the sanction judgment must be amended and vacated.

## PREFATORY STATEMENT

Justice Energy offers its sincere apology to the Court, Plaintiff James River Equipment, Virginia, LLC ("Plaintiff" or "James River Equipment") and Plaintiff's counsel for the unfortunate confluence of events that culminated in the Court's *Memorandum Opinion and Order* of January 5, 2016 (Document 59) (the "January 5th Order") and its Order of February 25, 2016 (Document 67) (the "Sanction Order"). From the outset, it must be emphasized that the current officers and directors of Justice Energy do ***not*** take federal court orders lightly and do ***not*** disregard or disobey such orders.[1] As set forth below, the officers and directors of Justice Energy were completely unaware of the January 5th Order until a reporter requested comment on the order. *See* Exhibit 1 to Defendant Justice Energy Company, Inc.'s Motion to Alter or Amend Sanction Judgment (the "Motion"), ¶¶ 7 through 10; Exhibit 2 to Motion, ¶¶ 7 through 10; and Exhibit 3 to Motion, ¶¶ 20 through 24. Further, the vast majority of events set forth in the January 5th Order occurred while Justice Energy was owned and operated by Mechel Bluestone, Inc. ("Mechel Bluestone"), a wholly owned subsidiary of Mechel OAO, a Russian company. *See* Exhibit 3 to Motion, ¶ 2.

In February of 2015, Bluestone Industries, Inc. ("Bluestone Industries") purchased the Bluestone operations, including Justice Energy, from Mechel Bluestone. *Id*. Roman Semenov

---

[1] The current officers of Justice Energy are:

        James C. Justice, II – President
        James C. Justice, III – Vice President
        Tom D. Lusk – Chief Operating Officer.

Exhibit 1 to Motion (Affidavit of James C. Justice, II) ¶ 1; Exhibit 2 to Motion (Affidavit of James C. Justice, III), ¶ 1; and Exhibit 3 to Motion (Affidavit of Tom D. Lusk), ¶ 14. James C. Justice, II, and James C. Justice, III, are also directors of Justice Energy. Exhibit 1 to Motion, ¶ 2; Exhibit 2 to Motion, ¶ 2.

served as the General Counsel of Mechel Bluestone and its subsidiaries (including Justice Energy) and was retained as General Counsel for Bluestone Industries to assist with the transition. *Supra.*, ¶¶ 4 through 8. It is now abundantly clear to the officers and directors of Justice Energy that Mr. Semenov *failed* to fully inform them of key orders issued by the Court in this matter, *failed* to respond appropriately to court orders and subpoenas, *failed* to respond to communications from Plaintiff's counsel, *failed* to update the West Virginia Secretary of State of the corporation's new address for service of process after the office at 100 Cranberry Drive was closed, and *failed* to otherwise respect the Court, Plaintiff and others in this matter.

Immediately upon learning of the January 5th Order, Justice Energy tendered settlement payments to Plaintiff and worked with Jason Hammond, counsel for Plaintiff, to effectuate filing of the *Joint Motion to Stay Action*. Exhibit 1 to Motion, ¶ 10; Exhibit 2 to Motion, ¶ 10; Exhibit 3 to Motion, ¶¶ 24 and 26 and Document 62, ¶ 8. In addition, Justice Energy secured outside counsel to appear in this matter to ensure clear communication between the parties and with the Court. (Document 63). Justice Energy has now tendered payment in *full* to James River Equipment. (Document 69). Just as importantly, it has taken affirmative steps to ensure that the litany of failures set forth above will *not* be repeated in the future – Mr. Semenov is no longer associated with Bluestone Industries, Inc. and an *Application to Appoint or Change Process, Officers, and/or Addresses* has been filed with West Virginia Secretary of State. Exhibit 3 to Motion; ¶ 27; Exhibit 4 to Motion. Thus, the circumstances that precipitated the Court's entry of the $1,230,000 sanction will *not* reoccur in the future. Justice Energy respectfully requests that this Honorable Court vacate or otherwise amend that portion of its February 25, 2016 Order that imposed the $1,230,000.00 sanction upon Justice Energy.

## STATEMENT OF SUPPLEMENTAL FACTS

### *Mr. Semenov's Failure to Communicate Key Rulings in This Matter to The Management of Justice Energy*

The officers and directors of Justice Energy were not aware of the January 5th Order and its $30,000 per day fine until February 15, 2016, when David Gutman of the Charleston Gazette-Mail, e-mailed Grant Herring, a representative of the Justice for Governor campaign, requesting a comment on the January 5th Order holding Justice Energy in contempt (the "Gutman E-mail"). Exhibit 1 to Motion, ¶ 10; Exhibit 2 to Motion, ¶ 10; and Exhibit 3 to Motion, ¶ 24. This e-mail ignited an internal investigation and the officers and directors of Justice Energy finally learned of the contents of the January 5th Order and the $30,000 per day fine on February 15, 2016. *Id.* Arrangements were immediately made to hand deliver two settlement payments to James River Equipment. In fact, the payments were tendered on February 15, 2016, the *same day* the officers and directors of Justice Energy became aware of the January 5th Order. Exhibit 3 to Motion, ¶ 26. This swift action demonstrates the regard Justice Energy has for this Court. In addition, it is worth noting that the final two settlement payments were not due until March 1 and April 1, but were hand delivered to James River Equipment on February 26, 2016. (Document 69).

As the internal investigation progressed, the officers and directors of Justice Energy also learned that Mr. Semenov had not advised them of other key orders in this matter or his failure to attend court proceedings as directed by the Court. For example, he did not advise them of the May 22, 2015 Order and the Court's Order to produce documents. Exhibits 1 and 2 to Motion, ¶¶ 3 through 6; Exhibit 3 to Motion, ¶¶ 16 through 19. However, upon receipt of the *Second Motion for Contempt and Motion for Sanction of Imprisonment of Officers and Directors until Justice Energy Complies with Court Order* ("Second Motion for Contempt") – a motion that sought *his* imprisonment as a sanction for various violations of the Court's Orders – Mr.

Semenov advised management and sought approval of a settlement agreement and payment plan. As set forth in the e-mail exchange below, the officers and directors authorized a payment plan to settle the underlying dispute with James River Equipment – a debt that was incurred while Justice Energy was owned and operated by Mechel Bluestone:

**From:** Roman Semenov [mailto:rsemenov@bluestoneindustries.com]
**Sent:** Wednesday, October 14, 2015 3:12 PM
**To:** Hammond, Jason
**Subject:** RE: James River Equipment v. Justice Energy Company (File #: 1575-4) - Claim No:

Mr. Hammond,

My client would like to propose a payment plan on the outstanding debt: 6 equal installments + 6 % interest on the outstanding amount
Is that something that your client will be interested in?


**From:** Hammond, Jason [mailto:jhammond@baileywyant.com]
**Sent:** Thursday, October 15, 2015 8:38 AM
**To:** Roman Semenov
**Subject:** RE: James River Equipment v. Justice Energy Company (File #: 1575-4) - Claim No:


Mr. Semenov,

Thank you for reaching out to me on October 14, 2015 to attempt to resolve this account with James River Equipment. My client is certainly willing to consider a payment plan of six months in duration in order to resolve this account. Just so you know, the outstanding account is in the amount of $190,328.16. This amount consists of the Judgment in the amount of $156,112.16, plus interest at the statutory rate of 11% per annum for a total interest of 29,688.55 from 1/21/14 through 10/14/15, and the attorney fee sanction that was received in the amount of $4,527.45. In an effort to resolve this matter promptly, James River is willing to provide a reduction to the total amount.

My client is willing to accept 6 monthly payments in the amount of $30,000.00, in order to resolve this Civil Action Pending in the U.S. District Court for the Southern District of West Virginia. The first payment will be due on November 1, 2015, with each following monthly payment due on the 1st of each month thereafter, until paid in full. In exchange, my client will withdraw its previously filed Second Motion for Contempt against Justice Energy and each of its officers, and once the account is paid in full will release the Judgments that it obtained in this action.

Please advise if this is acceptable and feel free to call or email me. Thanks

Jason

**Jason S. Hammond, Esquire**
Bailey & Wyant, PLLC
500 Virginia Street, East, Suite 600
P.O. Box 3710
Charleston, West Virginia 25337-3710
T: 304.345.4222 | F: 304.343.3133

5

**From:** Roman Semenov [mailto:rsemenov@bluestoneindustries.com]
**Sent:** Thursday, October 15, 2015 5:17 PM
**To:** Hammond, Jason
**Subject:** RE: James River Equipment v. Justice Energy Company (File #: 1575-4) - Claim No:

Mr. Hammond,

Thank you for your email. I want to confirm that the arrangement that you outlinedon your email below is accepted by Justice Energy.
Mr. Jay Justice asked to let your client know that he appreciates that James River Equipment is working with us to resolve previous owner's (Mechel OAO, not Justice) debt. First payment will be made next week.

Can you please provide details for the payment? Should it go to your office? To James River directly?

Regards,

Roman


**From:** Hammond, Jason <jhammond@baileywyant.com>
**Sent:** Friday, October 16, 2015 10:11 AM
**To:** Roman Semenov
**Subject:** RE: James River Equipment v. Justice Energy Company (File #: 1575-4) - Claim No:

Thanks. My client wants the checks sent directly to its office in Salem, Virginia. The address is:

James River Equipment Virginia, LLC
3902 W. Main Street
Salem, Virginia 24153

I have verbally informed our commissioner in aide of execution, Magistrate VanDervort of the settlement. He has requested that we file a Joint Motion that withdraws the Second Motion for Contempt, approves of the settlement and stays the action, pending the 6 payments being made. I will go dictate the Motion and will send you a copy as soon as it is typed up, likely on Monday.

Thanks for your assistance in resolving this.

<u>Jason S. Hammond, Esquire</u>
Bailey & Wyant, PLLC
500 Virginia Street, East, Suite 600
P.O. Box 3710
Charleston, West Virginia 25337-3710
T: 304.345.4222 | F: 304.343.3133

Exhibit 5 to Motion. The agreement also called for Plaintiff to withdraw its Second Motion for Contempt. *Id.* Magistrate Judge VanDervort had previously been appointed as a commissioner to aid in execution of the judgment in this matter. (Document 18). Mr. Hammond verbally informed Magistrate Judge VanDervort that the parties had reached a settlement and he

6

suggested that the parties file a joint motion permitting Plaintiff to withdraw the Second Motion for Contempt, approving the settlement agreement and staying the action. Exhibit 5 to Motion. Mr. Hammond drafted the joint motion and e-mailed it to Mr. Semenov on October 19, 2015. Exhibit 6 to Motion. Therein, he asked that Mr. Semenov sign the motion on behalf of Justice Energy or have another officer/director of the company sign the motion for filing. *Id.* Having not heard back from Mr. Semenov, Mr. Hammond followed-up with regard to the joint motion on October 23, 2015. Exhibit 7 to Motion.

The internal investigation revealed that Mr. Semenov did *not* request that an officer or director of Justice Energy execute the joint motion, did *not* forward either Mr. Hammond's e-mail of October 19th or 23rd to anyone else within Justice Energy and did *not* respond to Mr. Hammond in any fashion. Exhibit 1 to Motion, ¶11; Exhibit 2 to Motion, ¶ 11; Exhibit 3 to Motion, ¶ 23; and Exhibit 8 to Motion (Affidavit of Stuart West), ¶¶ 5 through 9. Thus, the Second Motion for Contempt was not withdrawn and the joint motion was not filed until February 15, 2016, *after* the officers and directors of Justice Energy learned of the January 5th Order through the Gutman E-mail. (Document 62). Had the Second Motion for Contempt been withdrawn and the joint motion been filed in October when the settlement agreement was negotiated, the January 5th Order would not have been entered in the first instance.

With the exception of Mr. Hammond's e-mail of January 6, 2016 in which he forwarded the January 5th Order to Mr. Semenov (Document 61-1), the internal investigation did not reveal any record that Justice Energy received a copy of the January 5th Order. Exhibit 8 to Motion, ¶ 13. The internal investigation also revealed that Mr. Semenov did not forward the e-mail on to anyone else within Justice Energy or Bluestone Industries and that he did not save the January 5th Order to the company server. *Id.*, ¶¶ 10 and 11.

7

*Mr. Semenov's Failure to Update the Company's Address with the*
*West Virginia Secretary of State in his Capacity as the Registered Agent*
*for Service of Process*

As alluded to above, this case began in 2013 while Justice Energy was owned and operated by Mechel Bluestone, a wholly owned subsidiary of Mechel OAO, a publicly traded Russian company. (Document 1), Exhibit 3 to Motion, ¶ 2. At that time, Mechel Bluestone maintained an office at 100 Cranberry Drive in Beckley, West Virginia. *Id.*, ¶ 5. Mr. Semenov served as General Counsel of Mechel Bluestone and worked out of the Cranberry Creek Drive office. *Id.*, ¶¶ 4 and 6. He was also the registered agent for service of process for a number of Bluestone entities, including Justice Energy, and his address was listed with the West Virginia Secretary of State's office as 100 Cranberry Creek Drive, Beckley, West Virginia. *Id.,* ¶ 7.

After Bluestone Industries acquired the Bluestone entities in February of 2015, Mr. Semenov was retained as General Counsel of Bluestone Industries to assist with the transition. *Id.*, at ¶ 8. Specifically, Mr. Semenov was retained to assist with the myriad of outstanding legal issues Bluestone Industries inherited from Mechel Bluestone including approximately $2,686,303.83 in unpaid vendor claims (thirty-two (32) of which involved ongoing litigation) and over $1,000,000.00 in unpaid tax. *Id.* at ¶ 9. In addition, Mr. Semenov continued to serve as the registered agent for service of process on behalf of Justice Energy. *Id.*, ¶ 10.

Mr. Semenov requested and was permitted to work out of Washington D.C. *Id.*, ¶ 11. In the spring of 2015, Bluestone Industries closed the office at 100 Cranberry Creek Drive and began a two-phase consolidation of offices to move their corporate offices to 216 Lake Drive, Daniels, West Virginia. *Id.*, ¶ 12. However, Mr. Semenov did ***not*** update the company's address with the West Virginia Secretary of State as the registered agent for service of process for Justice Energy. *Id.*, ¶ 13. Had Mr. Semenov updated Justice Energy's address with the West Virginia

Secretary of State, a copy of the January 5th Order would have been received at the corporate offices of Justice Energy.

## LEGAL STANDARD

"Rule 59(e) permits a court to amend a judgment . . . for three reasons: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *See EEOC v. Lockheed Martin Corp., Aero & Naval Syst.,* 116 F.3d 110, 112 (4th Cir. 1997); *Hutchinson v. Staton,* 994 F.2d 1076, 1081 (4th Cir. 1993). "Thus, the rule permits a district court to correct its own errors, 'sparing the parties and the appellate courts the burden of unnecessary appellate proceedings.'" *Pacific Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. Va. 1998) (citing *Russell v. Delco Remy Div. of Gen. Motors Corp.,* 51 F.3d 746, 749 (7th Cir. 1995)).

## ARGUMENT AND CITATION TO AUTHORITY

### A. New Evidence Warrants Amendment of the Sanction In Order to Prevent Manifest Injustice.

The officers and directors of Justice Energy were not advised of the January 5th Order by Mr. Semenov. Exhibit 1 to Motion, ¶¶ 7 through 9; Exhibit 2 to Motion, ¶¶ 7 through 9; Exhibit 3 to Motion, ¶¶ 20 through 22. Thus, they were effectively robbed of an opportunity to act promptly and minimize the monetary sanction. As set forth above, the management of Justice Energy only became aware of the January 5th Order and the $30,000 per day fine on February 15, 2016, when Mr. Gutman of the Gazette requested a comment on the order. Exhibit 1 to Motion, ¶ 10; Exhibit 2 to Motion, ¶ 10; Exhibit 3 to Motion, ¶ 24. That same day, an internal investigation was launched into this matter and the outstanding settlement payments were hand delivered to Plaintiff. *Id.*, ¶ 26. In the absence of this information, it appeared to the Court, the Plaintiff and Plaintiff's counsel that Justice Energy was ignoring the Court's Order. Nothing

could be further from the truth. Once aware of the Order, management acted with dispatch and haste to fully comply with the Court's order.

Rule 59(e) permits trial courts to alter or amend a prior judgment to account for new evidence that was not available or otherwise known to the Court at the time the judgment was entered in order to prevent manifest injustice. *EEOC v. Lockheed Martin Corp., Aero & Naval Syst.*, 116 F.3d 110, 112 (4th Cir. 1997). In *Jewell v. Actavis Group,* Judge Goodwin dismissed the action with prejudice as a discovery sanction. *Jewell v. Actavis Group*, 2010 U.S. Dist. LEXIS 77043; 2010 WL 3021896 (S.D. W. Va. 2010). In response to Plaintiff's motion to alter or amend the judgment, Judge Goodwin noted that the Court had limited information regarding the plaintiff's actual role in the circumstances giving rise to the dismissal. *Id*. Therefore, the Court provided the plaintiff with an opportunity to advise the court *via* letter of any grounds he wished to raise in support of amending the judgement "in order to prevent . . . manifest injustice in the event the plaintiff, as opposed to his counsel, was blameless for failure to provide sufficient [discovery] responses. . . ." *Id* at *3. Ultimately, the Court granted the motion and vacated that portion of its underlying order dismissing the action with prejudice in order to prevent manifest injustice. *Id* at *6.

Although *Jewell* is arguably distinguishable on the facts, the underlying principle that it is appropriate to grant a 59(e) motion when the client was not involved in the underlying circumstances giving rise to the sanction is equally applicable here. As was the case in *Jewell*, the Court did not possess all of the relevant information at the time it entered the January 5th Order. Due to Mr. Semenov's failure to respond to Mr. Hammond's e-mails of October 19th and 23rd, the joint motion was not filed in October and the Court was not aware that the parties had reached a settlement agreement, that Plaintiff had agreed to withdraw the second motion for

sanctions, or that the parties had agreed to seek a stay of the action. Similarly, due to Mr. Semenov's failure to advise the officers and directors of the January 5th Order, the management of Justice Energy was not aware that the Court had granted the Second Motion for Sanctions and imposed a $30,000 per day fine on the company *until* February 15, 2016. Upon becoming aware of the January 5th Order, Justice Energy acted promptly. Clearly, it would be manifestly unjust to permit the $1,230,000 sanction to stand under these circumstances. Justice Energy respectfully submits that justice requires this Honorable Court to modify the February 25th Order and vacate the sanction set forth therein in its entirety.

> **B. The Parties' Settlement Agreement Included the Monetary Sanction Set Forth in the May 22, 2015 Order and Obviated the Need to Produce Documents as Justice Energy's Current Owner Agreed that the Company Would Pay the Debt Incurred While it Was Owned by Mechel Bluestone.**

In its Contempt Order, Justice Energy was "held in civil contempt and fined the sum of thirty thousand dollars ($30,000) per day beginning on January 5, 2016, and continuing until such time as the Defendant fully complie[d] with the terms of the Court's *Order* of May 22, 2015." (Document 59, p. 10). In turn, the May 22nd Order directed Defendant to "produce to Plaintiff any and all documents reflecting the assumption of debt and liability, if any, from a recent transaction with Mechel North America, Mechel Bluestone, Inc., and/or Mechel North America Sales Corporation . . . within **fourteen (14) days** of the entry of this Order." (Document 51, p. 2). Plaintiff's purpose in requesting these documents was obviously to determine whether Bluestone Industries agreed to assume the underlying debt at issue in this matter as part of the acquisition of Mechel Bluestone. The Court determined that Justice Energy was "in contempt for failing to appear and violating the Court's orders after being given proper notice of the same." *Id.* As a contempt sanction, the Court granted Plaintiff judgment for its fees, costs and expenses as of May 20, 2015, in the amount of Four Thousand Five Hundred

11

Twenty-Seven Dollars and Forty-Five Cents ($4,527.45), with leave . . . to update the amount of said fees, costs and expenses." *Supra*.

After the Second Motion for Contempt was filed, the parties entered into a settlement agreement on October 15, 2015 in which Justice Energy agreed to tender $180,000 in six (6) equal monthly payments of $30,000 in full satisfaction of the underlying debt and the Court's judgment of May 22, 2015 for $4,527.45. This agreement obviated the need for Justice Energy to produce documents regarding the assumption of debt and liability that was incurred while the company was owned by Mechel Bluestone by the new ownership. Further, Justice Energy tendered two $30,000 payments to Plaintiff – one in November and a second in December. Thus, Plaintiff received compensation for the $4,527.45 civil contempt set forth in the May 22, 2015 Order.

As set forth above, Mr. Hammond verbally informed Magistrate Judge VanDervort that the parties had reached a settlement agreement. Exhibit 5 to Motion. Magistrate VanDervort suggested that the parties file a joint motion permitting Plaintiff to withdraw the Second Motion for Contempt, approving the settlement agreement and staying the action. *Id*. Mr. Hammond drafted the joint motion and forwarded it on to Mr. Semenov; however, Mr. Semenov did not secure the signature of an authorized agent for Justice Energy and the joint motion was not filed until *after* the Gutman E-mail was received on February 15, 2016.

Judicial sanctions in "civil contempt proceedings may . . . be employed for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *United States v. United Mine Workers*, 330 U.S. 258, 303-304, 67 S. Ct. 677, 701 (1947) (citing *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418 448, 449, 31 S. Ct. 492 (1911)). For all intents and purposes, Justice Energy had fully

complied with the Court's May 22, 2015 Order well before the January 5th Order setting the $30,000 per day fine was entered. It had agreed to be legally liable for the underlying debt, entered into a settlement agreement and repayment plan with Plaintiff, and tendered significant payments to Plaintiff under that agreement. Thus, there was no reason to coerce Justice Energy to comply with the May 22nd Order and no reason to compensate Plaintiff further as the parties had entered into a settlement agreement. Unfortunately, the Court was not aware of these developments when it entered the January 5th Order because Mr. Semenov did not respond to Mr. Hammond's e-mail correspondence of October 19th and 23rd requesting that Mr. Semenov secure a signature on behalf of Justice Energy to effectuate filing of the joint motion. (Document 61-1) (". . . please sign or have another officer/director of the company sign and return to me for filing.").

Although the Court was not timely and appropriately advised of the parties' agreement, the parties did enter a settlement agreement as of October 15, 2015 in which Justice Energy agreed to pay the underlying debt incurred while it was owned by Mechel Bluestone and that agreement included the monetary sanction set in the May 22nd Order. Thus, both of the Court's directives of May 22nd were accomplished and satisfied by the settlement agreement and there was no reason to further sanction Justice Energy on January 5th.

### C. The Sanction is Punitive and Therefore Criminal in Nature. As Such, it Must be Vacated as Justice Energy was Not Afforded Due Process of Law in Assessment of the Sanction.

The underlying principal amount James River Equipment sought to recover in this civil action was $148,496.14. (Document 1, ¶ 13(A)). The Court's $1,230,000 contempt sanction is more than eight times the principal amount sought by the Plaintiff. "Judicial sanctions in civil contempt proceedings may . . . be employed for either or both of two purposes: to coerce the

defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *United States v. United Mine Workers*, 330 U.S. 258, 303-304, 67 S. Ct. 677, 701 (1947) (citing *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 31 S. Ct. 492 (1911)); *see also Comer v. Kraft Food N. Am., Inc.*, 390 F.3d 812. 822 (4th Cir. N. C. 2004) (civil contempt sanction was overturned when a judge "took it upon himself" to award fees and because the sanction was criminal in nature and was not designed to compensate the complainant for losses sustained). "[A] civil contempt sanction . . . **may not be punitive**." *Gucci Am., Inc. v. Waxing Li*, 768 F.3d 122, 144 (2d Cir. 2014) (emphasis added); *see also Manhattan Industries v. Sweater Bee by Banff, Ltd.,* 885 F.2d 1, 5 (2d Cir. N.Y. 1989) ("[C]ivil contempt proceedings must be remedial and compensatory, and not punitive." (internal quotation marks omitted)); *see also Bradley v. Am. Household, Inc.,* 378 F.3d 373, 378 (4th Cir. W. Va. 2004) (holding fines were criminal because they were imposed for punitive purposes, they were made payable to the court, and they were not determined by reference to any losses incurred by the plaintiff); *see also Carbon Fuel Co. v. United Mine Workers*, 517 F.2d 1348 (4th Cir. W. Va. 1975) (civil contempt sanction was vacated because it was punitive in character, was payable to the clerk of the court, and was compensatory and not based on evidence of the complainant's actual loss). As set forth below, the sanction imposed by the Court's $1,230,000 sanction was neither compensatory nor coercive, but rather punitive.

Where compensation is intended, the fine is payable to the complainant. Such fine must be based upon evidence of the complainant's actual loss and is dependent upon the outcome of the basic controversy. *Id*. Here, the $1,230,000 sanction is clearly not compensatory as it is not based on Plaintiff's actual loss, was not dependent upon the outcome of the controversy and the payee is not the Plaintiff – it is the United States.

When the purpose of a sanction is coercive, courts have "broad discretion to design a remedy that will bring about compliance." *Perfect Fit Indus., Inc. v. Acme Quilting Co.*, 673 F.2d 53, 57 (2d Cir. N.Y. 1982); *see also Vuitton ex Fils S.A. v. Carousel Handbags,* 592 F.2d 126, 130 (2d Cir. N.Y. 1979) ("[T]he district judge, sitting in equity, is vested with wide discretion in fashioning a remedy."). In devising a remedy for a party or non-party's civil contempt, courts must consider: "(1) the character and magnitude of the harm threatened by the continued contumacy; (2) the probable effectiveness of any suggested sanction in bringing about compliance; and (3) the contemnor's financial resources and the consequent seriousness of the burden of the sanction upon [it]." *Dole Fresh Fruit Co. v. United Banana Co.*, 821 F.2d 106, 110 (2d Cir. 1987); *see also Gucci Am., Inc. v. Weixing Li*, 2015 U.S. Dist. LEXIS 160842, *6 (S.D.N.Y. Nov. 30, 2015). Here, the sanction is clearly not coercive in nature as the Court did not consider the factors set forth above. The $30,000 per day fine was not tied to the magnitude of harm threatened by continued noncompliance as the underlying debt at issue was only $148,496.14, Plaintiff did not suggest a monetary sanction of this magnitude and the Court did not consider the financial resources of Justice Energy in setting the sanction. Rather, it appears that the Court arbitrarily selected a sanction which is punitive in nature with no correlation to the underlying amount in controversy.

As the sanction is neither compensatory nor coercive in nature, it is clearly punitive and thus criminal in nature. *See Shillitani v. United States*, 384 U.S. 364, 369, 86 S. Ct. 1531, 1535 (1966) (a district court's description of a contempt sanction as either civil or criminal is not determinative and must be scrutinized independently by the appellate court). Further, the Fourth Circuit has prohibited monetary fines that go beyond that which is compensatory absent notice and an opportunity to be heard. *See In re Ethicon, Inc.,* 2015 U.S. Dist. LEXIS 140458, *8 (S.D.

W. Va. Oct. 15, 2015); *see also Hathcock v. Navistar Int'l Transp. Corp.*, 53 F.3d 36, 42 (4th Cir. 1995) (holding that a punitive fine imposed by a court under Rule 37 is "effectively a criminal contempt sanction, requiring notice and the opportunity to be heard" (citing *Buffington v. Baltimore Cnty.*, 913 F.2d 113, 133-35 (4th Cir. 1990))). Here, Justice Energy was not afforded these due process rights and, as such, the sanction must be vacated in its entirety.

The sanction judgment of $1,230,000 is punitive and criminal in nature. As such, Justice Energy was entitled to due process of law in assessing the sanction. Justice Energy was not given notice of the Court's intention to issue the sanction or an opportunity to be heard. In the absence of due process, the sanction must be vacated.

### D. The Sanction is Not Reasonably Proportionate to the Offending Conduct, but Rather is Excessive. As Such, it Must be Amended.

Although mathematical exactitude is not required, a sanction should be "reasonably proportionate to the offending conduct". *Goya Foods, Inc. v. Wallack Mgmt. Co.*, 344 F.3d 16, 19-20 (1st Cir. P.R. 2003); citing *United States v. United Mine Workers*, 330 U.S. 258, 303, 67 S. Ct. 677 (1947); *Long v. Steepro*, 213 F.3d 983, 986 (7th Cir. 2000); *Navarro-Ayala v. Nunez*, 968 F.2d 1421, 1426-27 (1st Cir. 1992). "[T]rial courts do not have unbridled license to pluck dollar figures out of thin air and incorporate them in[to] sanctions." *Id.* (citing *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 764-65, 100 S. Ct. 2455 (1980)). It appears that is precisely what the Court did in this instance. Although the Court was rightfully frustrated with Justice Energy's apparent lack of responsiveness in this matter,[2] it did not attempt to demonstrate that the $30,000 per day fine was proportionate to the perceived conduct of Justice Energy. Surely, a fine of $30,000 per day in a matter involving $148,496.14 is not proportionate. As such, Justice Energy

---

[2] As noted above, Mr. Semenov failed to adequately inform the officers and directors of Justice Energy of key orders and developments in this matter. Thus, the officers and directors of Justice Energy did not have an opportunity to respond appropriately to the Court's orders.

respectfully requests that this Court correct the $1,230,000 and spare "the parties and the appellate courts the burden of unnecessary appellate proceedings.'" *Russell v. Delco Remy Div. of Gen. Motors Corp.,* 51 F.3d 746, 749 (7th Cir. 1995).

## CONCLUSION

WHEREFORE, Defendant Justice Energy Company, Inc. respectfully moves this Honorable Court to GRANT its Motion to Alter or Amend the Sanction Judgment set forth in its February 25, 2016 Order and vacate the sanction in its entirety.

**JUSTICE ENERGY COMPANY, INC.**

*By Counsel*

LEWIS GLASSER CASEY & ROLLINS

/s/ Richard L. Gottlieb
G. Nicholas Casey, Jr. (WVSB No. # 666)
Richard L. Gottlieb (WVSB No. 1447)
Ramonda C. Lyons (WVSB No. 6927)
300 Summers Street, Suite 700
PO Box 1746
Charleston, WV  25326
Phone:  304-345-2000
Fax:      304-343-7999


WOOTON, DAVIS, HUSSELL & ELLIS, PLLC

/s/ John F. Hussell
Andrew L. Ellis (WVSB No. 10618)
John F. Hussell, IV (WV Bar # 6610)
John D. Wooton, Jr. (WV Bar #10571)
PO Box 3971
Charleston, WV  25339
Phone:  304-357-0709
Fax:      304-345-4607