IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

JAMES RIVER EQUIPMENT, VIRGINIA, LLC,

        Plaintiff,

v.                                      CIVIL ACTION NO.   5:13-cv-28160

JUSTICE ENERGY COMPANY, INC.,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the *Defendant Justice Energy Company, Inc.'s Motion to Alter or Amend Sanction Judgment* (Document 70), and *Memorandum of Law in Support* (Document 71). For the reasons set forth herein, the Court finds that the Defendant's motion should be denied.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The Plaintiff initiated the present action with the filing of a *Complaint* (Document 1) in this Court on November 6, 2013. Therein, the Plaintiff asserted claims of breach of contract and unjust enrichment against the Defendant and sought damages totaling $148,496.14, plus interest, costs, and attorney's fees. (Compl. at 2-4). When the Defendant failed to answer the *Complaint*, the Plaintiff filed a *Motion for Default Judgment* (Document 6) on December 19, 2013. On January 6, 2014, the Court entered an *Order* (Document 7) directing the Clerk of the Court to enter a default pursuant to Federal Rule of Civil Procedure 55(a). (*Order*, at 1-2.) On that same day, the Clerk entered a *Default* against the Defendant (Document 8). On January 21, 2014, the Court

entered an *Order* (Document 11) granting the Plaintiff's motion for default judgment, and awarding the Plaintiff $156,112.16 in damages. On April 30, 2014, at the request of the Plaintiff, the Clerk of the Court issued a *Writ of Execution* (Document 16) on the default judgment, commanding the Defendant to pay the default judgment, as well as interest accrued thereon.

When the Defendant failed to pay the judgment, the Plaintiff filed a *Motion for Appointment of Commissioner* (Document 17) on July 16, 2014, requesting that the Court appoint Magistrate Judge R. Clarke VanDervort to act as Commissioner in aiding the execution of the judgment, pursuant to Federal Rule of Civil Procedure 69(a). (Pl.'s Mot. for Appt. of Commissioner, at 1-2.) On August 1, 2014, the Court issued an *Order* (Document 18) granting the Plaintiff's motion, and appointing Magistrate Judge VanDervort to serve as commissioner in this matter. Magistrate Judge VanDervort issued an *Order* (Document 19) on August 19, 2014, commanding the parties to appear at a hearing on September 16, 2014, to discuss the current status of the judgment, and procedures to ensure payment. The Defendant failed to appear at the hearing. Magistrate Judge VanDervort issued an *Order* (Document 24) on October 1, 2014, commanding that a debtor's examination be held on October 14, 2014, in his chambers, and also commanding the Defendant to appear at the examination.

The debtor's examination was held as scheduled on October 14, 2014. Mr. Vladislav Andreev, Vice-President of Finance for the Defendant, appeared at the hearing, as did counsel for the Plaintiff. (Tr. at 2:2-10) (Document 28). Mr. Andreev testified that he was paid by "Bluestone Industries," that he was an officer of Justice Energy, and that he was also an officer of more than ten other affiliated entities. (*Id*. at 4:9-23). He also testified that at the time of the hearing, Justice Energy had "zero" assets in their bank account, as money was deposited in their

2

account at J.P. Morgan Chase before each payroll by a corporate affiliate. (*Id*. at 14:4-24). Notably, despite having been previously served interrogatories and requests for documents by the Plaintiff, Mr. Andreev failed to bring any documents with him to the hearing. (*Id*. at 6:6-7:4).

On March 12, 2015, Magistrate Judge VanDervort issued an *Order* (Document 29) stating that a hearing would be held on March 31, 2015, in his chambers, to discuss the current status of the judgment. The order indicated that attendance at the hearing was mandatory for all parties, and instructed that the Clerk send a copy of the order to Roman Semenov, designated in the Office of the West Virginia Secretary of State as the Defendant's agent for service of process. The Defendant failed to appear. (Status Hearing, at 1.) (Document 32).

On April 15, 2015, the Plaintiff filed a *Motion to Compel and Motion for Contempt* (Document 33). The motion was referred to Magistrate Judge VanDervort, who issued an *Order* (Document 36) directing that a hearing be held on May 5, 2015. Once again, the Defendant failed to appear for the hearing. (Motion Hearing, at 1.) (Document 39). On May 11, 2015, Magistrate Judge VanDervort issued his *Proposed Findings and Recommendations* (PF&R) (Document 42), wherein he recommended that the Defendant and Mr. Semenov be found in contempt of Court, and be required to pay Plaintiff's counsel for his services in preparation for and attendance at the various hearings held on the judgment. On the same day, this Court issued an *Order to Show Cause* (Document 41), commanding the Defendant and Mr. Semenov to appear before this Court on May 20, 2015, to show cause why they should not be adjudged in contempt, based on the facts contained in Magistrate Judge VanDervort's PF&R. On May 15, 2015, the Clerk received Return Receipt Cards (Documents 45 and 46) from Mr. Semenov and the Defendant, verifying receipt of the Order to Show Cause and Magistrate Judge VanDervort's PF&R.

A hearing was held before this Court on May 20, 2015. Neither Mr. Semenov nor any representative of the Defendant appeared at the hearing. (Show Cause Hearing, at 1.) (Document 49). Therefore, on May 22, 2015, the Court entered an *Order* (Document 51) commanding the Defendant to produce certain documents to the Plaintiff within fourteen days, and finding the Defendant in contempt of court for failing to appear and violating the Court's orders after receiving proper notice. (May 22, 2015 Order, at 1-2.) The Court also granted judgment in favor of the Plaintiff for fees, costs and expenses, totaling $4,527.45, and ordered that the Defendant produce certain documents to the Plaintiff. (*Id*.) Counsel for the Plaintiff alleged that he transmitted a copy of the Court's May 22, 2015 *Order* to Mr. Semenov via electronic mail and United States mail, that a representative of the Defendant subsequently communicated directly with the Plaintiff to offer a settlement, and that neither the Defendant nor Mr. Semenov have produced the required documents. (Pl.'s Mem. in Supp. of Mot. for Contempt, at 6.)

On September 30, 2015, the Plaintiff filed a *Second Motion for Contempt and Motion for Sanction of Imprisonment of Officers and Directors until Justice Energy Company, Inc. Complies with Court Order* (Document 53). The Defendant failed to respond. On October 15, 2015, the parties entered into a settlement agreement, wherein the parties agreed that the Defendant would pay the Plaintiff a total of $180,000 in six (6) monthly installments. (Def.'s Mem. of Law in Supp. of Mot. to Amend, at 12.) The Defendant subsequently tendered two payments to the Plaintiff. (*Id*.) However, the Defendant failed to make any additional payments, and the Plaintiff, therefore, did not withdraw its second contempt motion.

On January 5, 2016, the Court issued a *Memorandum Opinion and Order* (Document 59) granting the Plaintiff's motion for contempt, but denying the Plaintiff's motion to imprison the

officers and directors of the Defendant. The Court further ordered that the Defendant be fined the sum of $30,000 per day, until such time as the Defendant fully complied with the Court's *Order* of May 22, 2015. On January 25, 2016, the Court issued an *Order* (Document 60) requiring the parties to submit to the Court written statements on whether the Defendant had complied with the terms of the May 22, 2015 order. On February 1, 2016, the Court received the *Plaintiff James River Equipment Virginia LLC's Written Statement Regarding Whether the Defendant Has Fully and Faithfully Complied with the Terms of the May 22, 2015 Order* (Document 61), wherein the Plaintiff informed the Court for the first time of the settlement agreement, but indicated that the Defendant had failed to comply with the terms of the agreement. The Defendant did not respond to the Court's January 25, 2016 order.

On February 15, 2016, the parties filed a *Joint Motion to Stay Action* (Document 62). Therein, the parties advised the Court that on that date, the Defendant had made two payments to the Plaintiff, and requested that the Court stay the action, to allow the Defendant to comply with the terms of a settlement agreement entered into by the parties. On February 25, 2016, the Court entered an *Order* (Document 67) staying all claims against the Defendant, and staying the Court's ongoing sanction against the Defendant. The Court also ordered that judgment be entered against the Defendant and in favor of the United States in the amount of $1,230,000. On March 23, 2016, the Defendant filed the present motion. Neither the Plaintiff nor the United States filed a response. The motion is, therefore, ripe for review.

## STANDARD OF REVIEW

Rule 59(e) does not provide a standard under which a district court may grant a motion to

amend or alter a judgment. However, the Fourth Circuit has held that there are three grounds upon which a district court may amend a judgment: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Pacific Ins. Co. v. American Nat. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998), citing *EEOC v. Lockheed Martin Corp., Aero & Naval Sys.*, 116 F.3d 110, 112 (4th Cir. 1997); *Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir. 1993). However, Rule 59(e) motions may not be used to raise "arguments which could have been raised prior to the issuance of the judgment," or to argue a case under a "novel legal theory that the party had the ability to address in the first instance." *Pacific Ins. Co.*, 148 F.3d at 403, citing *Russell v. Delco Remy Div. of General Motors Corp.*, 51 F.3d 746, 749 (7th Cir. 1995); *Concordia College Corp. v. W.R. Grace & Co.*, 999 F.2d 326, 330 (8th Cir.1993); *FDIC v. World Univ., Inc.*, 978 F.2d 10, 16 (1st Cir.1992); *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir.1990). In general, reconsideration of a judgment is "an extraordinary remedy which should be used sparingly." *Pacific Ins. Co.*, 148 F.3d at 403 (citations omitted).

## DISCUSSION

The Defendant first argues that "[n]ew evidence" warrants amendment of the Court's entry of judgment. Specifically, the Defendant suggests that its former counsel and agent for service of process, Roman A. Semenov, was solely responsible for its failure to respond to orders of this Court. (Def.'s Mem. in Supp. of Mot. to Amend, at 4.) Specifically, the Defendant claims that Mr. Semenov failed to inform its officers and directors of "key orders" in this matter, or of "his failure to attend court proceedings as directed by the Court," and failed to properly communicate with the Plaintiff and other agents of the Defendant. (*Id.*) The Defendant further claims that, in

6

his capacity as the Defendant's General Counsel and registered agent for service of process, Mr. Semenov failed to update the Company's address with the West Virginia Secretary of State. (*Id*. at 5.) The company moved in the "spring of 2015," and because Mr. Semenov failed to update the company's address, the Defendant claims that it failed to receive a copy of this Court's *Order* of January 5, 2016.

Based on these purported facts, the Defendant argues that the Court did not have "all of the relevant information" when it entered its January 5, 2016 order. The Defendant, therefore, claims that under *Jewell v. Activis Group*, 2010 WL 3021896 (S.D.W.Va. 2010), the Court must amend the judgment in order to prevent manifest injustice. (Def.'s Mem. in Supp. of Mot. to Amend, at 10). While noting that *Jewell* is distinguishable from this case on its facts, the Defendant nonetheless argues that "the underlying principle" of *Jewell* is that "it is appropriate to grant a 59(e) motion when the client was not involved in the underlying circumstances." (*Id*.)

The Defendant is certainly correct that *Jewell* is distinguishable. In that case, Judge Goodwin vacated a portion of a previous order dismissing the case with prejudice, based on a letter from the Plaintiff which informed the Court for the first time of failures by counsel, and of the Plaintiff's severe physical and intellectual limitations. *Jewell*, 2010 WL 3021896, at *1-2. Judge Goodwin found that these limitations constituted "extraordinary circumstances" warranting relief, and also noted that the Plaintiff's counsel admitted he was responsible for the Plaintiff's pleading errors. *Id*. Here, the Defendant is a sophisticated business entity, and the only facts which the Defendant proffers as "new evidence" suggest that Mr. Semenov, as the Defendant's General Counsel, was negligent in his duties. The mere negligence of an employee is insufficient to give rise to "manifest injustice" under Rule 59(e). The Defendant admits that it retained Mr.

Semenov "to assist with the myriad of outstanding legal issues" it inherited from its predecessor in interest. (Def.'s Mem. in Supp. of Mot. to Amend, at 8.) That admission suggests that the Defendant made the voluntary choice to retain and to continue to employee Mr. Semenov. Even if the Court accepts the Defendant's claims regarding Mr. Semenov's negligence as true, the fact remains that the Plaintiff was severely prejudiced by the Defendant's failure to respond to orders of the Court. This case was originally filed in 2013, and the Defendant's conduct resulted in needless delay and a grossly excessive expenditure of judicial resources.[1] The Defendant provides no explanation for why it did not more closely monitor Mr. Semenov's performance, and the Court is loath to excuse a sophisticated corporate entity from judgment based solely on a claim that an employee failed to properly perform his duties.[2]

The Defendant's second argument is that the settlement agreement reached by the parties on October 15, 2015 "obviated" the Defendant's obligation to produce documents, in accordance with this Court's *Order* of May 22, 2015. (Def.'s Mem. of Law in Supp. of Mot. to Amend, at 12.) Because the parties had entered into a settlement agreement, the Defendant argues that "there was no reason" for the Court to use a sanction to coerce the Defendant into complying with the Court's May 22, 2015 order. (*Id*. at 13.) The Defendant acknowledges that the Court was

---

[1] In particular, the Court notes that the Defendant's conduct resulted in repeated filings and hearings in a case where the Defendant failed to contest the Plaintiff's entitlement to relief.

[2] The Defendant, in its *Memorandum in Support*, also emphasizes that "[i]mmediately upon learning of the January 5th Order," it "tendered settlement payments to Plaintiff," secured counsel, and took "affirmative steps to ensure that the litany of failures" in this case do not recur. (Def.'s Mem. of Law in Supp. of Mot. to Amend, at 2-3.) The Defendant acknowledges that it was prompted to take these steps by an inquiry from a reporter. (*Id*.) The Defendant implies that such conduct, which merely satisfies the customary standard of care which applies to any corporate entity served with legal process and subject to inquiry from a news reporter, should excuse its lengthy list of failings in this case. The Court disagrees. The docket in this case clearly demonstrates an egregious pattern of dilatory conduct by the Defendant dating to 2013. Merely taking steps that any other professionally managed corporate entity would take in light of the risk of adverse publicity is woefully insufficient to excuse the Defendant from a properly imposed judgment.

unaware of the settlement agreement, but attributes fault for that omission to Mr. Semenov, claiming that Mr. Semenov failed to "secure a signature on behalf of [the Defendant]" so that the parties could file a joint motion to terminate the Plaintiff's second motion to compel. (*Id.*) What the Defendant apparently fails to realize is that the entry into a settlement agreement does not moot an order of this Court, particularly where the parties do not notify the Court of the agreement and move for relief from pending obligations. The Court, after all, is not clairvoyant. The Court was first advised of the settlement agreement on February 1, 2016, and the Plaintiff correctly informed the Court that the Defendant had failed to comply with the terms of the agreement. Because neither party requested that the Court modify or stay its May 22, 2015 order, the Defendant remained bound by the terms of that order at the time the Court imposed the sanction at issue here, on January 5, 2016. Thus, the Defendant's second argument must fail.

The Defendant also argues that the Court should amend the judgment because "[t]he sanction is punitive and therefore criminal in nature." (Def.'s Mem. of Law in Supp. of Mot. to Amend, at 13.) While courts have an inherent power to enforce orders and judgments, Congress has also codified the contempt power of the federal courts in two statutes: 18 U.S.C. §401 and 18 U.S.C. §402. Section 401 governs sanctions for civil contempt, and, in relevant part, empowers the Court to "punish by fine or imprisonment … such contempt of its authority" as "(3) [d]isobedience or resistance to its lawful writ, process, order, rule, decree, or command." 18 U.S.C. §401. The Fourth Circuit has set forth four elements for courts to assess when a party moves for the sanction of civil contempt:

> "(1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) … that the decree was in the movant's "favor"; (3) that the alleged contemnor by its conduct violated the terms of

9

the decree, and had knowledge (at least constructive knowledge) of such violations; and (4) … that [the] movant suffered harm as a result."

*Ashcraft v. Conoco Inc.*, 218 F.3d 288, 301 (4th Cir. 2000), quoting *Colonial Williamsburg Found v. The Kittinger Co.*, 792 F.Supp. 1397, 1405-06 (E.D.Va. 1992), aff'd, 38 F.3d 133, 136 (4th Cir. 1994).

Meanwhile, Section 402 sets forth "[c]ontempts constituting crimes", and stipulates that:

"[a]ny person, corporation or association willfully disobeying any lawful writ, process, order, rule, decree, or command of any district court of the United States … by doing any act or thing therein, or thereby forbidden, if the act or thing so done be of *such character as to constitute also a criminal offense under any statute of the United States or under the laws of any State in which the act was committed*, shall be prosecuted for contempt …. And shall be punished by a fine under this title or imprisonment, or both."

18 U.S.C. §402 (emphasis added). Thus, under Section 402, a Court may only find a person, corporation or association in criminal contempt for disobedience of a Court's order, writ, rule, decree or command, where such disobedience constitutes an independent violation of federal or state law. *Id*. If a Court finds that a party satisfies the requirements of Section 402, and is, therefore, in criminal contempt, the accused is entitled to a trial by jury, pursuant to 18 U.S.C. §3691.

The Fourth Circuit has clarified the distinction between civil and criminal contempt by focusing on the purpose of the sanction. When the "nature of relief and the purpose for which the contempt sanction is imposed is remedial," and intended to "coerce the contemnor" into compliance with the Court, the "contempt is civil." *Buffington v. Baltimore County*, 913 F.2d 113, 134 (4th Cir. 1990). By contrast, where contempt sanctions are designed to "vindicate the authority of the court by punishing the contemnor and deterring future litigants' misconduct," the

contempt is criminal. *Id.*, citing *United States v. United Mine Workers*, 330 U.S. 258, 302–04 (1947); 3 C. Wright, Federal Practice & Procedure: Criminal 2d § 704, at 823–24 (1982).

Here, the Defendant does not contest that a finding of contempt under Section 401 was appropriate in this case. Rather, the Defendant argues that because the Court's sanction of $30,000 per day was not "based on the Plaintiff's actual loss," or "dependent upon the outcome of the controversy," the sanction is "neither compensatory nor coercive, but rather punitive." (Pl.'s Mem. of Law in Supp. of Mot. to Amend, at 14.) More specifically, the Defendant argues that the sanction "was not tied to the magnitude of harm threatened by continued noncompliance as the underlying debt at issue was only $148,496.14, Plaintiff did not suggest a monetary sanction of this magnitude, and the Court did not consider the resources of [the Defendant] in setting the sanction." (*Id.* at 15.) Thus, the Defendant argues that the sanction was "clearly punitive and thus criminal in nature." (*Id.*)

At the time the Court imposed the sanction on January 5, 2016, the Defendant had previously been found in contempt, and had nonetheless failed to comply with the terms of the Court's May 22, 2015 order for nearly eight (8) months. That order was only issued after the Defendant failed to appear for a hearing on the Plaintiff's first motion to compel, on May 5, 2015. Based on the Defendant's repeated noncompliance with orders of this Court, the Defendant's failure to appear for a properly noticed proceeding, and the fact that the Court had previously found the Defendant to be in contempt, the Court determined that a significant monetary sanction was necessary to coerce the Defendant into compliance.[3] The fact that a monetary sanction is

---

[3] The Defendant relies upon precedent from the Second Circuit to argue that this Court was required to consider "(1) the character and magnitude of the harm threatened by the continued contumacy; (2) the probable effectiveness of any suggested sanction in bringing about compliance; and (3) the contemnor's financial resources" in issuing the sanction. (Def.'s Mem. of Law in Supp. of Mot. to Amend, at 15, quoting *Dole Fresh Fruit Co. v. United Banana Co.*, 821 F.2d

11

significant does not render the sanction punitive. Further, the severity of the monetary sanction in this case was within the exclusive control of the Defendant, as the Court imposed a daily sanction for each day of continued non-compliance. The Court's sole purpose in imposing the sanction was to coerce the Defendant into complying with the Court's May 22, 2015 order. On February 15, 2016, when the Court received notice that the Defendant had reached a settlement with the Plaintiff, the Court promptly stayed the sanction, entered judgment for the amount of the sanction, and ordered that the sanction be re-imposed if the Defendant failed to comply with the terms of the settlement agreement. (*See* Order, at 2) (Document 67). As a result, the Court's sanction was clearly remedial, and the Defendant's argument fails.

Finally, the Defendant argues that the sanction is not "reasonably proportionate to the offending conduct." (Def.'s Mem. of Law in Supp. of Mot. to Amend, at 16, quoting *Goya Foods, Inc. v. Wallack Mgmt. Co.*, 344 F.3d 16, 19-20 (1st Cir. 2003) (citations omitted).) Once again, the Defendant relies on precedent which is not binding on this Court. Fourth Circuit precedent does not require this Court to calculate a sanction which is "proportionate to the perceived conduct" of a party. Notwithstanding that point, the Court's sanction *was* reasonably

---

106, 110 (2d. Cir. 1987).) As an initial matter, Second Circuit precedent is not binding on this Court, and the Court is not required to apply the factors set forth by the Defendant. Further, a review of these factors nonetheless supports the sanction imposed by the Court. First, at the time the sanction was imposed, the Defendant's ongoing noncompliance imposed serious costs on the Plaintiff. Each time the Defendant failed to comply with this Court's orders, the Plaintiff was required to incur additional legal costs. Further, the Plaintiff brought this case in 2013, and obtained a default judgment on January 21, 2014. Because of the Defendant's recalcitrance, at the time the Court entered its sanction, the Plaintiff had waited nearly two years for satisfaction of the judgment. Furthermore, the Plaintiff had waited nearly eight months for the Defendant to comply with the terms of the Court's May 22, 2015 order. It was therefore clear to the Court on January 5, 2016, that the Defendant had no intention of complying with the Court's orders, and that the Plaintiff suffered ongoing harm as a result. Whether an employee of the Defendant was negligent, and whether that employee's negligence was the cause of the Defendant's conduct, is immaterial – the Plaintiff was harmed by the Defendant's delay. Similarly, it was clear to the Court that only a significant monetary sanction was likely to coerce the Defendant into compliance. The Court had previously found the Defendant in contempt, and that finding had no impact on the Defendant's subsequent conduct. Finally, while the sanction may have burdened the Defendant financially, that burden was outweighed by the risk of further delay, and the resulting costs to both the Defendant and to the Court.

proportionate to the offending conduct. As the Court has noted, the Defendant in this case, after being found in default, repeatedly ignored judicial orders and failed to appear for properly noticed proceedings. The Court first attempted to resolve this misconduct by finding the Defendant in contempt. Only when that failed, and when the Defendant had failed to comply with the terms of this Court's order of May 22, 2015 for nearly eight months, did the Court impose a monetary sanction. That sanction was issued solely for the purpose of compelling the Defendant to comply with the directives of the Court. When the parties notified the Court of the settlement of the claims in this case, the Court immediately halted the sanction. Because the sanction was properly imposed and proportionate to the offending conduct, this argument lacks merit as well.

## CONCLUSION

Wherefore, after careful consideration, the Court **ORDERS** that the *Defendant Justice Energy Company, Inc.'s Motion to Alter or Amend Sanction Judgment* (Document 70) be **DENIED**. The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: August 4, 2016

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

13