IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

TRANSCRIPT OF PROCEEDINGS

------------------------------x
                              :
JAMES RIVER EQUIPMENT,        :        CIVIL ACTION
Virginia, LLC,                :        NO. 5:13-cv-28160
                              :
vs.                           :
                              :
JUSTICE ENERGY COMPANY,       :        September 16, 2014
INC., a West Virginia         :
Corporation,                  :
                              :
         Defendant.           :
                              :
------------------------------x

STATUS CONFERENCE

BEFORE THE HONORABLE R. CLARKE VANDERVORT
UNITED STATES MAGISTRATE JUDGE


APPEARANCES:

For the Plaintiff:          MR. JASON S. HAMMOND
                            Bailey & Wyant
                            P.O. Box 3710
                            Charleston, WV  25337-3710

For the Defendant:          No Appearance






Court Reporter:             Lisa A. Cook, RPR-RMR-CRR-FCRR

Proceedings recorded by Courtflow; transcript produced by
computer.

P R O C E E D I N G S

1

2          THE COURT:  This is the matter of *James River*

3   *Equipment, Virginia, LLC* vs. *Justice Energy Company, Inc.*,

4   Civil Action Number 5:13-28160.  And the Court notes in

5   attendance James River Equipment's attorney, Mr. Jason

6   Hammond of Bailey & Wyant.

7          The purpose of this proceeding, I suppose, is to have a

8   status respecting matters that pertain to the collection of

9   a judgment that was taken by default against Justice Energy

10  Company.

11         And please have a seat, Jason.  Yeah, thank you.

12         And we have notified in several different ways, and I

13  think Jason has also notified independently in several

14  different ways, the representative of Justice Energy Company

15  respecting these proceedings.  And we have at this point in

16  time, which is the time when the hearing was set to occur,

17  no representative of Justice Energy Company present.

18         So I suppose it's appropriate to speak about -- I'm in

19  a double role, Jason, sort of a hybridized role of appointed

20  Commissioner in the matter under West Virginia statute and

21  also United States Magistrate Judge.  So I'm at your

22  disposal, sir.

23           MR. HAMMOND:  I appreciate that.  And you're

24  right.  As soon as your last order was issued, I personally

25  sent a letter to Mr. Semenov with a copy of this.

1        In the meantime, I think it was on August 27th, I sent

2   a request for production in aid of execution hoping that

3   would bring something to the top here.

4        I've not heard anything at all from Justice Energy on

5   this.  My initial thoughts are at this point they are in

6   contempt of your order by failing to contact me on this.

7        Here in two weeks they're going to be late on request

8   for production of documents which I intend on filing a

9   motion to compel on.  And we may be at the point where we

10  need to set another status conference and I issue a subpoena

11  to Mr. Semenov --

12            THE COURT:  Uh-huh.

13            MR. HAMMOND:  -- for him to personally appear at

14  this, or at least appear via counsel.

15            THE COURT:  I was needling around on-line and I

16  saw a, a reference to an MSHA violation and litigation that

17  pertained to the mine that Justice Energy Company, Inc.,

18  was -- had some dealings about.  And there was a man whose

19  last name begins with a B, Bartlett or Barrett or something

20  like that.  And I wondered -- who, who represented, I

21  believe, Justice Energy and the mine at that time.

22            MR. HAMMOND:  I can tell you I have -- both myself

23  and my firm have a handful of other litigation against

24  Mechel Bluestone entities and they're represented in every

25  other case.

```
 1                THE COURT:  Uh-huh.

 2                MR. HAMMOND:  And I've mentioned this case to

 3    those attorneys in the other cases.

 4                THE COURT:  Is that right?

 5                MR. HAMMOND:  They know nothing about it and

 6    haven't had any discussions.

 7                THE COURT:  Uh-huh.

 8                MR. HAMMOND:  But they are disputing debt in other

 9    cases.

10                THE COURT:  And represented in other cases?

11                MR. HAMMOND:  Represented in other cases.

12                THE COURT:  Well, I wonder -- in those cases, of

13    course, then you're going to come upon a great deal of

14    information about this Justice Energy Company.

15                MR. HAMMOND:  At this point within this case I

16    want all their asset information, all their liability

17    information.

18                THE COURT:  Uh-huh.  And you're not getting that

19    in the other matters?

20                MR. HAMMOND:  No.  And to some extent I don't know

21    as if I'd be completely entitled to all of that information

22    yet given it would just be discovery on a breach of contract

23    case.

24                THE COURT:  Oh, I see.  Those are in earlier

25    stages of, of the dispute --
```

1          MR. HAMMOND:  Correct.

2          THE COURT:  -- than this particular case?

3          MR. HAMMOND:  This is the most advanced of the

4  cases.

5          THE COURT:  Okay, okay.  So what is your plan?

6          MR. HAMMOND:  The responses to the request for

7  production are due -- I think it's September 27th or 28th.

8  At that point, I was going to send another certified letter

9  to Mr. Semenov giving him five days to respond.  And then I

10  was going to file a motion to compel in front of you again

11  and have them served with that.

12      And then if we're going to set another status hearing,

13  I'm going to issue a subpoena to Mr. Semenov to try to get

14  his attendance or get his attention.  I recently located his

15  personal address here in Beckley.  So I'm just going to have

16  him served both at the office as well as at his residence.

17          THE COURT:  And he still remains the agent for

18  purposes of service; is that correct?

19          MR. HAMMOND:  According to the Secretary of

20  State's website, correct.

21          THE COURT:  Okay.  Well, I view my role as the

22  Commissioner appointed by the District Court in this matter

23  as being a good bit more proactive about these matters.

24      Let me ask you how you are on perfection of your liens.

25          MR. HAMMOND:  At this point, I had abstracts of

1    judgment issued.  I have since recorded those in three or

2    four counties that I know Bluestone entities operate in.

3              THE COURT:  Uh-huh.

4              MR. HAMMOND:  I believe Raleigh, Wyoming, and

5    McDowell.

6              THE COURT:  Okay.

7              MR. HAMMOND:  So that's where we're at with those.

8    I issued a generic writ of execution, U.S. Marshal's Office.

9    Of course it was returned --

10             THE COURT:  Uh-huh.

11             MR. HAMMOND:  -- with no assets at this point

12   because they didn't have any specific assets to, --

13             THE COURT:  Yeah, nothing specific.

14             MR. HAMMOND:  -- to collect at this point.

15             THE COURT:  Uh-huh.

16             MR. HAMMOND:  So that's where we are.  They're

17   completely perfected liens.

18             THE COURT:  Okay, good, because a judgment,

19   abstract of judgment covers real estate, as you know, and

20   the execution will cover personalty, including cash.

21      Are you -- I, I would suggest to you that -- and let me

22   tell you I used to love to collect money as a practicing

23   lawyer.  It was the most fun I ever had.  I mean, it was

24   just a, a -- it was cowboy time, you know.  And how I came

25   upon my -- I've come upon information just out riding my

1    Harley, you know, and seen people by mistake.

2        But I would suggest that you might want to think about

3    just issuing a blanket set of suggestions and having them

4    served upon all the banks in the Raleigh County area.

5            MR. HAMMOND:  Okay.

6            THE COURT:  I would also suggest that you think

7    about, to the extent that you, you feel you can under, under

8    Rule 11, I suppose, would be what would guide you, pierce

9    the corporate veil proceeding.

10        You know, you're trying to put yourself in the head of

11   these people who are -- and what are they thinking?  They

12   may have done as so many do, transferred the assets of the

13   company to another company and left the liabilities there.

14   So --

15           MR. HAMMOND:  Sure.  And that's really the purpose

16   of a lot of the request for production I had was to put

17   myself in that position.

18           THE COURT:  Sure, sure.

19           MR. HAMMOND:  If not, try to get in a position

20   where they want to discuss some sort of payment or

21   settlement of this.

22           THE COURT:  Right.  Well, I, I think also let's --

23   I would like to, to the extent that your schedule will

24   permit, hale them into court and get them in here and sit

25   them down on the witness stand and we'll take some

1    testimony.

2           MR. HAMMOND:  That would be great.

3           THE COURT:  You know, it's -- I want them to

4    understand that they're misunderstanding the way this whole

5    process works and that they are going to pay the judgment of

6    the court.

7           MR. HAMMOND:  I appreciate that.

8           THE COURT:  So I, I would like to proceed on a

9    pretty expedited basis.  And if we can issue summonses and

10   have them served, then I think that would be helpful to all

11   of us to get the matter --

12          MR. HAMMOND:  I agree.

13          THE COURT:  -- moving and on.  So just let us

14   know.  And don't hesitate to pick the phone up and call us

15   when you have a few minutes and a thought or two.

16          MR. HAMMOND:  Okay.  Well, I'm -- my time frame

17   now is really -- I'm about three weeks away from being in a

18   position where I can --

19          THE COURT:  Uh-huh.

20          MR. HAMMOND:  -- move forward with those steps.

21          THE COURT:  Well, the -- I'm not so sure about the

22   sanctions issues and contempt issues.  If they're -- they're

23   going to avoid those as well in my view, you know.

24          MR. HAMMOND:  Sure.

25          THE COURT:  I'd like to see whatever's name,

1    Mr. Semenov, in the witness stand in about a week.

2              MR. HAMMOND:  Okay.

3              THE COURT:  I don't think you need to wait --

4    interrogatories in aid of execution are -- when the, when

5    the old courthouse was in Charleston -- and perhaps you

6    don't remember that -- old federal courthouse, the then

7    sitting Magistrate Judge would allow me to use his courtroom

8    in debt collection proceedings and we'd go on to 7:00, 8:00

9    at night, 9:00 at night taking testimony and he would leave.

10   Jerry Hogg, you know, Jerry would leave.

11         But it was also -- it was, it was the kind of

12   proceeding that we would put them in the witness stand,

13   swear them, put them under oath.  I'd have a court reporter

14   there and we'd take -- I'd get the Chapter 7 bankruptcy --

15   the form you fill out for Chapter 7 bankruptcy is what I

16   used to examine witnesses because it has every asset known

17   to man in there, including farm animals.

18         And I actually seized a dog at the dog track once.  I

19   seized a dog, but it was a big mistake.  It was a wild

20   animal.  But, but, you know, it really impresses upon them

21   if you can have your collection proceedings in the

22   courtroom.

23             MR. HAMMOND:  Sure.  I appreciate that.  I haven't

24   seized a dog, but I did try to sell Dupont once.

25             THE COURT:  You tried to sell what?

1          MR. HAMMOND:  DuPont.

2          THE COURT:  DuPont?

3          MR. HAMMOND:  We did seize a train one time.

4          THE COURT:  You did seize a train?

5          MR. HAMMOND:  My former boss, yes.

6          THE COURT:  Is that right?  You seized a train?

7          MR. HAMMOND:  Yeah, stopped at the Amtrak

8    station --

9          THE COURT:  Good for you.  Wow.

10          MR. HAMMOND:  -- at Charleston.

11          THE COURT:  You had to get a writ of possession or

12    something on that thing?

13          MR. HAMMOND:  We did.

14          THE COURT:  Wow.  I, I tried to get a Learjet once

15    but it belonged to a coal mine person.  And it landed at the

16    Kanawha airport and I couldn't get -- I would have chained

17    myself to that airplane but I couldn't get Judge Hey to give

18    me a writ -- he happened to have been busy and he, he

19    typically would just write out a writ of possession for me

20    and just go up and seize the plane.  But I've never seized

21    a, a -- that's a big deal.  But I have to say the -- I

22    seized a dog at the dog track.

23          MR. HAMMOND:  That's quite impressive.

24          THE COURT:  Uh-huh.  They took the dog to the

25    evidence locker.  I had a, I had a police officer seize that

1     dog. I forget his name now. He was the one assigned in

2     Kanawha County, you know. They used to have a police

3     officer assigned to collection efforts and you had a big

4     book of writs and everything.

5         And they took it to the evidence locker and the dog

6     tore up -- those greyhound dogs are a bit wild. They're not

7     trained. I thought they, I thought they were small dogs.

8     They're large dogs. And, so, he had it in his patrol car,

9     took it in there. And the guy who owned it was from Ohio.

10    He paid up right away just to get his dog back.

11           MR. HAMMOND: Well, after we got the train, money

12    was wired to us in about a half hour.

13           THE COURT: Is that right?

14           MR. HAMMOND: So --

15           THE COURT: I can --

16           MR. HAMMOND: -- it was totally effective.

17           THE COURT: I can imagine because they're on a

18    schedule, these schedules, you know. But it's not so much

19    money in this case. How much is it?

20           MR. HAMMOND: About 160,000.

21           THE COURT: Yeah. That's not a whole lot of money

22    really. And they -- and I, I saw some of their, some of

23    their financials. Until at least this year, they were

24    mining some coal.

25           MR. HAMMOND: Well, there's still a little bit.

1          THE COURT:  Three or 400,000 a year -- tons a

2   year.

3          MR. HAMMOND:  They're due to issue another

4   quarterly report in October.

5          THE COURT:  Is that right?

6          MR. HAMMOND:  Yeah.

7          THE COURT:  And you can get ahold of that?

8          MR. HAMMOND:  Yeah.  It's public information.

9          THE COURT:  Uh-huh.  Through the Secretary of

10  State?

11         MR. HAMMOND:  Through SEC filings.

12         THE COURT:  Oh, okay, okay, good, good.  Well,

13  let's chase her around a little bit and see, --

14         MR. HAMMOND:  Okay.

15         THE COURT:  -- see if we can't get them in court

16  real soon.

17         MR. HAMMOND:  Okay.

18         THE COURT:  Often judgment debtors are under --

19  they misunderstand or they're head-in-the-sand types, you

20  know, or they're just plain not going to pay unless you make

21  them.

22         MR. HAMMOND:  Right.

23         THE COURT:  Uh-huh.  All right.  Well, I'm glad,

24  glad to meet you, Jason, and I'll look forward to working

25  with you.  Excellent firm you're with.

1      MR. HAMMOND:  That's good.  Thank you.  I

2  appreciate that.

3      (Proceedings concluded)

4                    *  *  *  *  *

5

6

7

8

9

10      I, Lisa A. Cook, Official Reporter of the United

11  States District Court for the Southern District of West

12  Virginia, do hereby certify that the foregoing is a true and

13  correct transcript, to the best of my ability, from the

14  record of proceedings in the above-entitled matter.

15

16

17      s\Lisa A. Cook                    September 29, 2016

18          Reporter                              Date

19

20

21

22

23

24

25